UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES R. WOODS also known as RANDY WOODS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 1:14-cv-01220-RLY-DML |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

# Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff James R. Woods is not disabled.

## Introduction

Mr. Woods applied on October 13, 2011, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that he has been disabled since June 2, 2011. Acting for the Commissioner of the Social Security Administration following a video hearing on December 3, 2012, an administrative law judge ("ALJ") found that Mr. Woods is not disabled. The Appeals Council denied review of the ALJ's decision on May 27, 2014, rendering the ALJ's decision

for the Commissioner final. Mr. Woods timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Woods contends the ALJ erred at steps two and three of the disability sequential analysis, as well as in his determination of Mr. Woods's residual functional capacity. Mr. Woods argues that the ALJ's decision does not address the mental restrictions that he claims are supported by the totality of the evidence, and that the ALJ's decision erroneously assigned little weight to an opinion by his therapist. He also argues that the ALJ failed to consider the full extent of Mr. Woods's combined impairment resulting from his obesity and sleep apnea.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Mr. Woods's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Mr. Woods is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C.

§ 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

**I.    Substantial evidence supports the ALJ's step two decision.**

As Mr. Woods admits in his initial brief, the ALJ discussed Mr. Woods's mental health treatment at length in his step two analysis. The ALJ noted that when he asked Mr. Woods's counsel at the hearing to identify Mr. Woods's severe impairments, the lawyer did not mention any mental health impairments. (R. 38, 70). But since Mr. Woods's medical records showed he began treatment for depression in early 2011, the ALJ addressed the mental health treatment records and opinions. (R. 38). The ALJ commented on the normal findings reflected in the treatment records, as well as the fact that Mr. Woods was making progress in treatment and continued to take his medication as prescribed. (R. 39).

The ALJ evaluated each of the B factors under the mental health listings and documented the evidence he considered and relied upon in reaching his conclusions that Mr. Woods did not have a severe mental impairment but that his mental impairments, in combination with all impairments, limited Mr. Woods's RFC to simple, repetitive tasks. Mr. Woods contends the ALJ did not properly consider and assess his limitations in social functioning and in concentration, persistence, or pace ("CPP"), and should have found he had moderate limitations in both areas, and should have accounted for moderate limitations in the RFC.

As to the B factors, the ALJ first addressed Mr. Woods's daily living activities. The ALJ concluded that Mr. Woods is only mildly limited in this area because he lives alone and admitted he is capable of performing chores, cooking, and maintaining personal hygiene, all of which he manages without assistance. (R.

41). In addition, Mr. Woods continued to work after his alleged onset date of his disability, which the ALJ found constituted additional evidence that he had no limitations in this area.

With respect to social functioning and CPP, the ALJ evaluated the opinions in the record, including those of Ms. Grande, a licensed marriage and family therapist who had treated Mr. Woods, and of Drs. Casserly and Pressner, state agency medical consultants.

Ms. Grande, Mr. Woods's therapist, completed a Report of Psychiatric Status in late November 2011. While the ALJ acknowledged that Mr. Woods was unable to complete serial seven subtractions, "his abstract thinking and judgment were within normal limits." (R. 40). In addition, Mr. Woods's "prognosis was moderate to good as he complied with all of the recommendations . . . ." (*Id.*). The ALJ found Ms. Grande's opinion that Mr. Woods "has issues keeping employment due to his depression and health issues" (and her assigned GAF score of 45) to be inconsistent with her treatment records, which showed that Mr. Woods "has worked for the past several years as a dog trainer, judge, and set up exhibits for dog shows stating that while not lucrative, this was his full-time job and he loved what he was doing." (R. 41).[1]

Dr. Casserly had conducted a mental status examination in December 2011. The ALJ discussed statements Mr. Woods made to Dr. Casserly, as well as Dr.

---

[1] The court addresses in the next section Mr. Woods's argument the ALJ did not give sufficient weight to Ms. Grande's opinions.

Casserly's findings that Mr. Woods's mood and affect were normal, he had a positive attitude and appeared energized, there was no evidence of a thought or perceptual disorder, and his behavior appeared goal oriented. (R. 40). The ALJ also commented on the GAF score of 67 that Dr. Casserly assigned to Mr. Woods, which is indicative of only some difficulty in social, occupational, or school functioning.[2] (*Id.*).

Dr. Pressner completed a Psychiatric Review Technique form and Mental RFC Assessment form in December 2011. While the ALJ agreed with Dr. Pressner's view that Mr. Woods had no limitations in activities of daily living, he assigned little weight to Dr. Pressner's findings of moderate difficulties in social

---

[2] GAF stands for Global Assessment of Functioning and is a 100-point rating scale that has been used by mental health professionals and clinicians at Axis V of the multiaxial mental health diagnostic system since the implementation of Axis V in the third edition of the Diagnostic and Statistical Manual adopted by the American Psychiatric Association. The GAF score was carried over to the DSM-IV, published in 1994, and the DSM-IV-TR ["text revision"], published in 2000, but was eliminated with the adoption of DSM-5 in 2013. The middle of the scale reads as follows:
    GAF 31-40   Some impairment in reality testing OR impairment in speech and communication OR serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood.
    GAF 41-50   Serious symptoms OR serious impairment in one of the following: social, occupational, or school functioning.
    GAF 51-60   Moderate symptoms OR moderate difficulty in one of the following: social, occupational, or school functioning.
    GAF 61-70   Mild symptoms in one area OR difficulty in one of the following: social, occupational, or school functioning. BUT, the person is generally functioning pretty well and has some meaningful interpersonal relationships.
    GAF 71-80   Person has symptoms/problems, but they are temporary, expectable reactions to stressors. There is no more than slight impairment in any area of psychological functioning.

functioning and in concentration, persistence, or pace. (*Id.*). The ALJ determined these conclusions were inconsistent with the GAF score of 67 assigned by Dr. Casserly, which the ALJ found *was* consistent with Mr. Woods's "high level of functioning as he admits that he continues to work at dog shows, owns a business, [and] has meaningful friendships, including a girlfriend . . . ." (*Id.*). In addition, the ALJ stressed Mr. Woods had admitted that his limitations were primarily physical and not mental. (*Id.*). The ALJ therefore concluded that Mr. Woods was "at most" only mildly limited in social functioning and in CPP.

As to the last B factor, episodes of decompensation, the ALJ found that while Mr. Woods experienced suicidal thoughts as a side effect of a medication he was taking, he did not act on those thoughts and was never hospitalized for a mental impairment. (*Id.*). Therefore, the ALJ concluded that no episodes of decompensation existed as to the fourth B factor.

Based on his analysis of the four B factors, the ALJ concluded Mr. Woods's anxiety and depression were non-severe impairments. (*Id.*). Notwithstanding the finding of only non-severe mental impairments, the ALJ gave Mr. Woods the benefit of the doubt and determined that for purposes of the RFC, the "combination of his impairments limited him to simple, repetitive tasks requiring limited reading and writing." (R. 38).

The ALJ's reasoned analysis of the evidence pertinent to the four B factors constitutes substantial evidence supporting the decision at step two that Mr. Woods's anxiety and depression are not severe impairments. The court may not

8

reweigh the evidence, and Mr. Woods cannot point to any line of evidence that the ALJ failed to consider that decidedly detracts from his findings. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir. 2010) (ALJ is not required to discuss every piece of evidence but is "prohibited only from ignoring an entire line of evidence that supports a finding of disability").

Mr. Woods asserts that even if the ALJ's decision that the mental impairments were non-severe is supportable, the ALJ should have included more restrictions in the RFC to account for Mr. Woods's difficulties with CPP. He contends that the RFC really does not address or accommodate any CPP limitations because the "simple, routine, and repetitive tasks" limitation the ALJ included in the RFC was to account for Mr. Woods's fatigue symptoms. He further argues that by giving Mr. Woods the "benefit of the doubt" regarding mental limitations, the ALJ was required to include an additional limitation traced solely to CPP. However, Mr. Woods cites no authority that an RFC limitation cannot address more than one impairment, nor does he identify what additional limitations, if any, are needed to address any CPP limitations.

Mr. Woods then seems to argue that even if the "simple, routine, and repetitive tasks" limitation was used to address or accommodate Mr. Woods's mental limitations, this court would still need to remand in light of the Seventh Circuit's decision in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). However, what the Seventh Circuit said in *O'Connor-Spinner* – that limitations to simple, routine, and repetitive tasks do not necessarily account for *moderate*

9

deficiencies of CPP – does not apply in cases where, as here, the ALJ has found only *mild* limitations in CPP, a finding supported by substantial evidence. *See, e.g., Kinsey-McHenry v. Colvin*, 2013 WL 5460161 (N.D. Ind. Sep. 30, 2013) ("In this case, the ALJ considered the evidence of both mental health opinions and concluded that the evidence still showed that [the claimant] did not have a mental impairment. Based on this conclusion (supported by the specific reasons stated above) and as authorized by the regulations, it was then appropriate for the ALJ not to incorporate any limitations in the RFC based on her mild mental limitations.")

The fact that the ALJ afforded Mr. Woods "the benefit of the doubt" regarding his mental limitations and stated that Mr. Woods was limited to simple, routine, and repetitive tasks requiring limited reading and writing does not transform the ALJ's B-factor evaluation into a finding that Mr. Woods's CPP was moderately limited by his mental impairments. Nor does it implicate *O'Connor-Spinner's* holding that moderate CPP limitations are not necessarily captured adequately by an RFC limitation to simple and repetitive tasks. To the contrary, the fact the ALJ made some accommodations for the limiting effects of Mr. Woods's mental impairments even though they were not severe demonstrates that the ALJ complied with his duty to consider both severe *and* non-severe impairments when deciding an appropriate RFC. (R. 41-42). *See Denton v. Astrue,* 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.")

Mr. Woods's assertions of error regarding the ALJ's alleged failure to consider the full extent of his mental impairments on his ability to work are, at bottom, requests for the court to reweigh the evidence. That we cannot do. Because the ALJ supported with substantial evidence his evaluation of the mental impairments and their effects on work ability, the court cannot find error.

**II.     The ALJ did not err in assigning little weight to the opinion of Ms. Grande, the treating therapist.**

Mr. Woods asserts that the ALJ "assigned little weight to Ms. Grande's report without addressing any valid reasons for not providing it great weight." This is not a fair reading of the ALJ's decision. In discussing Ms. Grande's opinion, the ALJ stated that he gave Ms. Grande's opinion (and her assigned GAF score of 45) little weight as it was "inconsistent with her own treatment records." In support, the ALJ emphasized that Mr. Woods has steadily worked over the past several years as a dog trainer and judge, and setting up exhibits for dog shows. (R. 41).

Mr. Woods also claims that the ALJ's opinion does not mention or discuss regulatory factors used in evaluating medical opinions. As part of this argument, he takes issue with the ALJ's identification of Ms. Grande as a mere social worker (when she is a licensed therapist with a master's degree in psychology) and subsequent characterization of her as not a "medically acceptable source." There is no reversible error here.

Medical opinions from treating sources may be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2). Where medical opinions from treating sources are not given controlling weight, regulatory factors are applied in order to determine what

weight to assign the opinion: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) *consistency* (generally, the more consistent an opinion is with the record as a whole, the more weight given); (5) specialization; and (6) any other relevant factors.  20 C.F.R. § 404.1527(c) (emphasis added).  Social Security regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . . ."  20 C.F.R. § 404.1527(a)(2).  An "acceptable medical source" is defined, in relevant part, as a "licensed or certified psychologist[]."  *See* 20 C.F.R. §§ 404.1502, 404.1513.  An ALJ is not required to explicitly weigh every factor.  *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject Dr. Preciado's reports, but she did note the lack of medical evidence supporting Dr. Preciado's opinion, and its inconsistency with the rest of the record.  That is enough.").

 Mr. Woods does not argue that Ms. Grande is a licensed or certified psychologist.  Therefore, it was not error for the ALJ to find Ms. Grande is not an acceptable medical source whose opinion could be given controlling weight.  Moreover, the ALJ gave good reasons for discounting Ms. Grande's opinion—even if she had been an acceptable medical source.  The ALJ explicitly discussed the inconsistency of Ms. Grande's opinion with other evidence in the record – specifically, Ms. Grande's own treatment notes. That is enough.  *See Henke,* 498

Fed. App'x at 640 n.3 (though ALJ did not explicitly discuss every factor in addressing reasons for rejecting medical opinion, it is enough that she noted the lack of supporting medical evidence and the inconsistency of the opinion with the rest of the record).

### III. The ALJ considered the extent of Mr. Woods's combined impairment resulting from obesity and sleep apnea.

Mr. Woods asserts the ALJ failed to analyze fully the combination of Mr. Woods's obesity and sleep apnea in determining Mr. Woods's RFC. He also argues that the ALJ "made no attempt to analyze Listing 3.10, which is evidence of clear reversible error." (Pl. Br. at 33). The court will address these arguments in reverse order.

Notwithstanding Mr. Woods's assertion to the contrary, the ALJ explicitly discussed and considered Listing 3.10. The ALJ explained:

> The claimant's impairments fail to meet the requirements of Listing 3.10-*Sleep-related breathing disorders*, as evaluated under 3.09-*Cor Pulmonale secondary to chronic pulmonary vascular hypertension*, because the record, consistent with the findings below, does not demonstrate clinical evidence of cor pulmonale with: A) mean pulmonary artery pressure greater than 40 mm Hg; or B) arterial hypoxemia.

(R. 42). It is the claimant's burden to prove that his condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). But Mr. Woods's brief does not address the criteria under Listing 3.10 or cite any evidence that supports a finding the listing has been met. The ALJ considered and rejected Listing 3.10 and explained his reasoning for his conclusion; thus, there is no error. Furthermore, Mr. Woods's argument is not well taken, as at the hearing before the

ALJ, counsel for Mr. Woods stated that he was not contending that a listed impairment had been met or equaled. (R. 71).

With respect to the combined effect of Mr. Woods's obesity and sleep apnea, the ALJ found at step two that both conditions were severe impairments. (R. 38). At step three, the ALJ acknowledged that obesity is no longer a listed impairment but considered Mr. Woods's obesity "in relation [to] the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling." (R. 42). As discussed above, the ALJ considered whether Mr. Woods's sleep apnea met the criteria for Listing 3.10 and explained the reasoning for his conclusion that Mr. Woods did not meet the criteria. The ALJ also noted that the Disability Determination Service medical examiners did not find that a listing had been met and that Mr. Woods did not specifically allege obesity as an impairment. (R. 42, 48).

The RFC the ALJ assigned to Mr. Woods limited him to light work with exceptions. (R. 43). The ALJ imposed the following limitations for Mr. Woods's fatigue: he is to avoid driving, operating moving machinery, concentrated exposure to large bodies of water, exposed flames, unprotected heights and unguarded hazardous machinery such as a punch press; and he is limited to simple, routine, and repetitive tasks requiring limited reading and writing. (*Id.*).

In his step four analysis, the ALJ discussed Mr. Woods's medical records in detail. This analysis included, but was not limited to, the following evidence: (1) relatively normal examination findings following rotator cuff surgery; (2) a normal stress test that showed an excellent exercise tolerance with no evidence of ischemia;

(3) a pulmonary function test that showed no obstruction and was negative for small airways disease with no restrictions present; (4) a normal musculoskeletal examination, except for complaints of joint pain and leg cramps, in October 2011; and (5) admission by the claimant that use of oxygen and a Bi-PAP titration machine at night alleviated his symptoms. (R. 45). The ALJ noted that the "conservative course of treatment belie[d] the severity of symptoms and limitations alleged" and found that "[i]n general, the claimant's testimony and allegations with regard to his limitations are disproportionate to the objective findings within the record." (R. 46-47). It also bears mentioning that the RFC ultimately imposed by the ALJ was more restrictive than that recommended by the DDS state agency medical consultants. (R. 46). Furthermore, Mr. Woods did not offer any additional limitations that should have been included in the RFC to address the combination of his obesity and sleep apnea.

      Mr. Woods's assertions of error regarding the ALJ's RFC determination fail because they seek the court to reweigh the evidence and evaluate Mr. Woods's credibility differently from the ALJ. Again, those tasks are inappropriate for the court to undertake.

## **Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Mr. Woods is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: August 20, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system